## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS MONTILLA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PRISON HEALTH SERVICES,** | : | |
| **INC., et al** | : | **NO. 11-2218** |

### MEMORANDUM OPINION

**Savage, J.**                                               **September 23, 2011**

### Introduction

Luis Montilla, a state prisoner, filed this civil rights action under 42 U.S.C. § 1983,
contending that the defendants violated his constitutional right under the Eighth
Amendment to be free from cruel and unusual punishment, and committed medical
malpractice. He claims that because the defendants inadequately treated his osteoporosis
and did not provide an immediate hip replacement, he has pain and is unable to walk
without crutches. He has sued various prison officials involved in the prison grievance
process, the company contracted to provide health care services at the prison, SCI-
Graterford, and various health care providers who had contact with him in the prison.
Specifically, he names as defendants Prison Health Services, Inc., Donna Sue Snyder,
Richard Stefanic, John Zaro, Bruce Blatt, Margarita McDonald, Felipe Arias, Miguel
Salomon, and Marlene Coachi (collectively referred to as the "medical defendants"); and
the Bureau of Health Care Services, Joseph Korszniak, Jay Lane, David DiGuglielmo,
Michael Wenerowicz, and Myron Stanishefski (collectively referred to as "DOC
defendants"). All defendants have moved to dismiss the complaint pursuant to Fed. R. Civ.
P. 12(b)(6).

**Background**

Accepting the factual allegations in the complaint as true and drawing all reasonable inferences from them in Montilla's favor, we conclude that he has not pleaded sufficient facts to state a constitutional claim for deliberate indifference.  We shall recite the facts as Montilla has alleged them in his detailed complaint.  We emphasize that our rendition of the facts are solely from Montilla's complaint.

Montilla was seen by Dr. Salomon for complaints of back and neck pain on September 26, 2006.  After diagnosing Montilla with osteoporosis, Salomon prescribed calcium pills.  Complaining of continuing pain in his back, Montilla was seen by Dr. Arias who told Montilla there was nothing wrong with him and denied his request for a back brace.  After years of requesting treatment of prison officials for pain in his hip, Montilla was scheduled to visit Dr. Stefanic in the prison medical department to receive a cortisone injection on March 8, 2010.  Because Stefanic was unavailable, Montilla was seen by Dr. Blatt.  After Blatt consulted with Drs. McDonald and Zaro, Zaro agreed to administer the injection, subject to reviewing Montilla's x-rays.  Zaro determined from the x-rays that Montilla's hip had become too deteriorated to receive the injection and informed Montilla that he needed hip replacement surgery.  Despite this recommendation, Blatt prescribed Montilla physical therapy and scheduled an appointment with Dr. Henry.  Henry provided Montilla exercises intended to relieve the pain in his hips and scheduled a follow-up appointment one month later.

On May 15, 2010, Montilla filed a grievance, complaining of inadequate medical

2

treatment for his deteriorated hips.[1]  He explained that the "medical department" refused
to provide the treatment his examining physicians had deemed necessary to correct his
condition.  Montilla requested that the medical department be required to perform the hip
replacement.

On June 30, 2010, his grievance was denied.   Corrections Health Care
Administrator Korszniak informed him that a review of his medical file and a consultation
with his physical therapist revealed that he had been treated "in accordance with
community standards," and advised him to continue his physical therapy and report to sick
call if he experienced further pain.   Montilla appealed Korszniak's decision to
Superintendent Wenerowicz who stated, "[i]n response to your appeal of the referenced
grievance, I am upholding the response provided by trained professionals.  I am not
qualified to overrule their diagnosis or treatment plans.  I'd encourage you to continue
working with medical staff in an effort to determine a suitable resolution for your
discomfort."  In short, Wenerowicz concluded that the physicians' treatment of Montilla's
condition was reasonable and appropriate, and surgery was not medically necessary at
that time.

Montilla appealed to the Chief Secretary's Office of Inmate Grievances and Appeals.
Finding no evidence of "neglect or deliberate indifference," "Central Office" rejected
Montilla's grievance and appeal as frivolous.

On November 7, 2010, Montilla filed for reconsideration claiming that his physical
therapy ended after only two sessions and the anti-inflammatory medications prescribed

---

[1] In his complaint, Montilla recounts several informal complaints and communications with prison
officials.  These are not recited in detail here because they were not made pursuant to prison policy.

for his osteoporosis were ineffective. Montilla's final appeal was summarily denied on November 15, 2010 on the ground that he had already received final disposition of his claim through the Office of Inmate Grievance and Appeal.

Montilla's December 27, 2010 appointment with Stefanic was cancelled because his records "were not there." The following day, Montilla went to sick call where he was told by Couchi, a physician's assistant, that he would have to wait to be seen by Stefanic. On January 6, 2011, Montilla was seen by Stefanic who asked why he was using crutches. When he asked Stefanic why the DOC would not give him a hip replacement, Stefanic responded that "their (DOC) response is nonsense."

Less than three months later, Montilla filed his complaint.

### Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability"

4

is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in Montilla's complaint and draw all possible inferences from these facts in his favor.

### Discussion

*The Medical Defendants*

The medical defendants argue that Montilla failed to properly exhaust his available administrative remedies because he did not specifically identify them in his grievance as required under Pennsylvania Department of Corrections Administrative Regulation 804 ("DC-ADM 804"). Montilla claims that his reference to the "medical department" in his grievance implicitly included the medical defendants he now identifies in his complaint.

Exhaustion of available administrative remedies is a prerequisite to filing a prisoner's suit. 42 U.S.C. § 1997e(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). DC-ADM 804 mandates that inmates will "identify any person(s) who may have information that could be helpful in resolving the grievance." This provision requires an inmate to identify

5

the individuals he claims are responsible for his injuries. *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004). This requirement puts "prison officials on notice of the persons claimed to be guilty of wrongdoing." *Id.* Failure to specifically identify an individual "by name or by description" in the prison grievance usually renders any claim against that individual procedurally defaulted. *Id.* at 225, 234. However, a prison may excuse an inmate's procedural default by identifying those individuals responsible in its response to the inmate's grievance. *Id.* at 234.

Without specifically identifying any of the defendants in his first official inmate grievance, Montilla complained of inadequate medical treatment by the "medical staff" and described his various complaints to "Superintendent David DiGuglielmo, numerous doctors and . . . the therapist." Deputy Superintendent Lane responded to Montilla's first official grievance by noting that he had "followed up with Medical" regarding Montilla's complaints and instructed Montilla to continue "work[ing] with the Medical Department" in order to address his concerns.

Taken together, these references in Montilla's grievance and the prison's responses adequately identify the medical defendants. Montilla brings claims against each of the medical providers and PHS in his complaint. Although his grievances and the prison's responses do not identify the individual medical defendants by name, they do identify them by description. The descriptions adequately put the prison on notice of the identities of any potential wrongdoers. *See, e.g., Carter v. Smith*, No. 08-279, 2011 WL 2313862, at *18 (E.D. Pa. June 13, 2011) (grievances against "medical department" sufficient to notify prison of claims against PHS). Accordingly, Montilla has not procedurally defaulted on his claims against the medical defendants by failing to identify them in his grievance.

6

Although Montilla has exhausted his administrative remedies, he has failed to adequately allege deliberate indifference to his hip condition. His complaint is not that he did not receive treatment but that he did not get the treatment he wanted. He presents a case of a disagreement as to what is the proper medical treatment.

Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim, a prisoner must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill*, 372 F.3d at 235-36.

A medical need is serious "if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Johnson v. Stempler*, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. The official must not only be aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm; he must draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Under the Eighth Amendment, only claims of unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of a prisoner rise to the level of a constitutional violation. *Spruill*, 372 F.3d at 235. Deliberate indifference to serious medical needs occurs when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a

prison official's denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury; or (3) officials intentionally refuse to provide care even though they are aware of the need for such care. *Id.*

Deprivation of necessary treatment of a serious medical need violates a prisoner's Eighth Amendment rights. Medical malpractice is insufficient to establish a constitutional violation. *Estelle*, 429 U.S. at 105-06. Likewise, disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Spruill*, 372 F.3d at 235.

The gravamen of Montilla's complaint is that the prison medical staff ignored his complaints of debilitating hip pain and a physician's opinion that he required hip replacement surgery. However, according to Montilla's allegations, the staff did not ignore his complaints and instead treated him. He complains that the medical defendants prescribed physical therapy rather than surgery. Montilla alleges that Zaro, Blatt and McDonald consulted concerning a course of treatment, a possible cortisone injection to relieve his pain. After Zaro reviewed Montilla's x-rays and determined a cortisone injection would be ineffective and possibly harmful, he informed Montilla that he would require hip replacement surgery. At the same time, Zaro, Blatt and McDonald prescribed an alternative plan, physical therapy.

Even if  Montilla's hip pain gave rise to a serious medical need, the allegations do not show that Zaro, Blatt and McDonald were deliberately indifferent to that need. After conferring, they developed a conservative treatment plan. At best, Montilla alleges a difference of medical opinion, not deliberate indifference, among Zaro, Blatt and McDonald.

Montilla also fails to state a claim against Arias, Salomon and Couchi. According

to the complaint, Salomon treated Montilla for osteoporosis and prescribed calcium pills. Arias, who saw Montilla for complaints of back pain, told Montilla there was nothing wrong with him and refused to provide him a back brace.  The only action alleged that Couchi did was that he saw Montilla at sick call on one occasion and informed him that he must wait to be seen by Stefanic. Stefanic merely discussed Montilla's treatment history with him on a single occasion.  Nothing in these allegations suggests that Stefanic, Arias, Couchi and Salomon acted with deliberate indifference to Montilla's hip pain.

Montilla's sole allegation regarding Snyder is that he wrote to her requesting assistance in getting proper medical care. He does not allege how, if at all, she responded. Nothing he alleges amounts to deliberate indifference on Snyder's part.

The detailed complaint does nothing more than chronicle Montilla's efforts to get hip replacement surgery and the medical staff's opinion that alternate treatment was more appropriate at that time.  It does not allege sufficient facts to support a plausible claim that the medical defendants intentionally refused to provide medical care in disregard of a substantial risk to his health or safety or denied reasonable requests for medical treatment. Accordingly, Montilla has not alleged facts giving rise to a cause of action for deliberate indifference against the individual medical defendants.

Nor does Montilla state a cause of action against PHS for deliberate indifference. If a private corporation acts with "power 'possessed by virtue of state law and made possible only because [it] is clothed with the authority of state law,'" it is acting under color of state law and may be sued under § 1983 for actions taken that deprive an inmate of adequate medical care. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).  *See also Natale v. Camden Cnty.*

9

*Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003).  However, it cannot be held liable

for the actions of its employees under a *respondeat superior* theory.  *Natale*, 318 F.3d at

583.  It can be liable where it instituted a policy, practice or custom that resulted in the

plaintiff's constitutional injury.  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 325 (3d Cir.

2005).  An employee's actions are the result of a PHS policy or custom if: (1) PHS

promulgated a policy statement and the injurious act occurred as a result of the

implementation of that policy; (2) the policymaker himself violated a federal law; or (3) the

policymaker is deliberately indifferent to the need for action to correct an inadequate

practice that is likely to result in a constitutional violation and fails to act.  *Natale*, 318 F.3d

at 584.

Having determined that Montilla has failed to state a claim for deliberate indifference

against the individual medical defendants, we do not reach the question of whether the

action taken was the result of a PHS policy, practice or custom.   There was no

constitutional violation that could have resulted from PHS policy.  Thus, no liability can be

imputed to PHS.

### Department of Corrections Defendants

Montilla sues the DOC defendants in both their official and individual capacities.  A

government official, acting in his official capacity, is not a "person" subject to suit under 42

U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly,

all claims for compensatory relief against the DOC defendants in their official capacities

must be dismissed.

Montilla has also named the Bureau of Health Care Services ("BHCS") as a

defendant.  BHCS is an arm of the Pennsylvania Department of Corrections, a state

10

agency.  The Eleventh Amendment bars claims for damages against the Department of Corrections. *Weigher v. Prison Health Services*, 402 F. App'x 668, 670-71 (3d Cir. 2010). Therefore, because the Department of Corrections has not waived its sovereign immunity, BHCS will be dismissed.

Montilla has failed to state a claim of deliberate indifference against the remaining DOC defendants who had no hand in making medical decisions affecting him.  Non-medical prison officials are afforded wide latitude in leaving prisoners' care to medical personnel. *Thomas v. Dragovich*, 142 F. App'x 33, 41-42 (3d Cir. 2005) (Becker, J., dissenting) (prison officials are afforded "broad discretion to leave prisoners in the hands of medical personnel").  Non-medical prison personnel are not chargeable with deliberate indifference for withholding specific treatment from a prisoner unless they knew or should have known that medical personnel were mistreating or failing to treat a prisoner. *Spruill*, 372 F.3d at 236.  Reviewing a prisoner's grievance relating to medical care alone is insufficient to impute knowledge to a prison official. *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007).  The Eighth Amendment requires no more of the grievance examiner than he "review the prisoner's complaints and verify with the medical officials that the prisoner was receiving treatment." *Id.* (internal citations and quotations omitted).

In his complaint, Montilla does not allege any facts that support an inference that the prison officials participated in or directed the medical decisions.  He makes a conclusory statement that the DOC defendants are preventing him from getting a hip replacement, which they know he needs.  The facts, as alleged by Montilla, are that the prison officials reviewed his medical records and consulted with the treating physicians. At each stage of the grievance process, the officials confirmed that he was receiving

11

treatment and advised him to continue with that care. They concluded from their consultation with the medical experts that Montilla's treatment plan was appropriate. As alleged by Montilla, Lane noted that "[n]o evidence of neglect or deliberate indifference has been found."

Other than listing Stanishefski as a defendant, Montilla makes no further reference to him. He alleges nothing that he did or did not do. Therefore, Stanishefski must be dismissed.

Montilla claims that his various letters and grievances put the remaining DOC defendants on notice of the medical defendants' inadequate treatment. He argues that they were required to intervene with the medical defendants on his behalf and compel them to administer a more aggressive treatment plan, including hip replacement surgery. His allegation rests upon the premise that prison officials can and should second guess the medical decisions of competent health care providers. Contrary to Montilla's position, the DOC defendants were under no obligation to interfere with the medical defendants' treatment plan or overrule their medical judgment. *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). Having determined that Montilla was under the care of competent medical personnel, the DOC defendants denied Montilla's grievances. They were not competent to overrule the medical experts.

There are no allegations to support any claim that the DOC defendants were deliberately indifferent to Montilla's needs. They did not ignore his complaints. They consulted with the medical defendants and accepted their professional judgment. There are no facts alleged that could give rise to an inference that the DOC defendants were not

12

justified in deferring to the physicians. Therefore, his Eighth Amendment claim against the DOC defendants will be dismissed.

*Pendent State Law Claims*

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a related state court claim if it has dismissed all claims over which it has original jurisdiction. If all federal claims are dismissed before trial, "the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citation omitted). No extraordinary circumstances exist here. Accordingly, we decline to exercise supplemental jurisdiction over Montilla's medical malpractice claims.

## Conclusion

Because Montilla has failed to state a claim for a constitutional violation under the Eighth Amendment and we decline to exercise supplemental jurisdiction over his medical malpractice claims, we shall grant the motions to dismiss. Accordingly, his complaint will be dismissed.